## Jenkins's Estate.

*Decedents' estates—Conditional sale distinguished from bailment.*

1. An agreement by which the claimant undertakes to procure insurance at its own expense upon decedent's real estate and to cause to be installed on the premises a sprinkler equipment constructed in accordance with certain plans to be approved by the underwriters bureau having jurisdiction, etc., creates a conditional sale as distinguished from a bailment, and upon distribution of decedent's estate, the claimant is entitled as a general creditor only.

2. A vendor under a conditional sale cannot obtain a lien against the lands of the decedent by filing a copy of the agreement as required by the Conditional Sales Acts of May 1, 1923, P. L. 117, or May 14, 1925, P. L. 722, after decedent's death. Per LAMORELLE, P. J., Auditing Judge.

Exceptions to adjudication. O. C. Phila. Co., Jan. T., 1926, No. 714.

The essential provisions of the contract between the claimant and decedent and the relevant facts appear from the adjudication of

LAMORELLE, P. J.—The next claim is that of F. R. Cruikshank & Company in the sum of $4458.48. In the petition the amount of the claim is admitted, but the claim of the claimant that it is preferred over the claim of general creditors is disputed.

From the testimony and the stipulation of facts agreed to between counsel for the accountant and counsel for the claimant, it appears that the claimant and the decedent entered into a written contract, under date of Sept. 29, 1924, by which the claimant agreed to procure insurance policies at its own expense, insuring premises No. 346 East Walnut Lane, Germantown, against fire for ten years from Jan. 15, 1925, for $95,000, and also that it would cause to be installed upon the property a sprinkler equipment. The decedent agreed to pay the claimant ten instalments of $1083 each, the first instalment to be paid upon installation of the sprinkler system, the second instalment Jan. 15, 1926, and the subsequent instalments at intervals of one year apart. The claimant agreed to maintain the sprinkler system at his own expense for the period of the contract and, also, to install certain water connections.

The decedent further agreed that, on default by him in the performance of any of the covenants of the contract, the contract should, at the option of the claimant, at once cease and end, and that all the rights, title and interest of the decedent to any improvements placed upon the property should immediately cease, and the company might, with or without legal process, enter the premises and remove any part or all of said improvements without claim for damages against it and without prejudice to their rights under the agreement.

The claimant further agreed that, upon faithful compliance by the decedent of the terms and conditions of the contract, any improvements placed upon the property should, at the completion of the contract, become the sole property of the decedent, and that the claimant would execute a proper bill of sale for the same. It was also agreed that "the amount to be paid under this contract shall be, continue and remain a lien upon the above described premises, as security therefor, until the same is fully paid."

The claimant procured fire insurance . . . and also installed a sprinkler system. . . .

The first two instalments provided for by the contract were paid by the decedent during his lifetime. After the death of the decedent, a portion of the $95,000 insurance was surrendered and canceled and the executrix received the unearned premium, and the remaining portion of the insurance was transferred to the purchaser of the property. After making these allowances, the balance due under the contract is $6242.64. By clause 5 of the contract, it is provided that the owner has the right to anticipate any of the pay-

ments at 7 per cent. per annum, and counsel agreed that, if the payments were anticipated, the amount due would be $4604.06.

It further appears that, under date of May 7, 1926, the executrix entered into an agreement with the E. F. Griffiths Company, a corporation, for the sale of said premises for the sum of $40,000, subject to an existing mortgage of $18,000, and that the Orphans' Court granted leave to make said sale by decree, dated June 5, 1926. At the time of the settlement between the purchaser and the executrix, it appeared that the contract above referred to had been filed on May 8, 1926, in the Court of Common Pleas No. 3 of Philadelphia County, as of March Term, 1926, No. 487, in the book provided for the filing of conditional sales agreements. The fact that such a contract had been filed appeared on the settlement certificate of the Colonial Trust Company as an objection, and they refused to issue the title policy until the objection was removed. Thereupon, a verbal agreement was entered into between the executrix and the purchaser (the exact terms of which are not stated) that $5000 should be left in the hands of the Colonial Trust Company to await the determination of the respective rights of the claimant and the estate.

The claimant contends that, under the contract, there was a bailment of the sprinkler system, whereas counsel for the accountant contends that there was a conditional sale. The question, therefore, arises which one it was.

By the contract, the claimant binds himself to procure fire insurance policies for a certain term and in a certain amount and to install a sprinkler system. It was urged that the installation of the sprinkler system was primarily for the benefit of the decedent to reduce the fire risk upon the property, and, therefore, the insurance premiums to be paid by the claimant. This would seem to be true. It was also urged that the provision that it should be maintained at the expense of the claimant shows that the ownership was to remain in the claimant, and that the provision that a bill of sale should be executed for the sprinkler system, if all the terms and conditions of payment were met, would not necessarily prove that it was a sale with an attempt to reserve title in the claimant until all the payments were made, and, finally, that title remained in the bailor as against all persons, not only because of the express words of the contract, but because of the purpose connected with the transfer of possession.

The Auditing Judge is of opinion that the price stipulated for in the contract was for procuring insurance and installing the sprinkler system, and not merely for procuring insurance. On the assumption that it was merely for the latter purpose, on compliance with the terms of the contract, the decedent would have become entitled to a bill of sale without paying therefor. The absurdity resulting from such a contention is in itself enough to prove its unsoundness.

The sprinkler system is not leased and there is no rental fixed. Where there is a lease, a provision that the lessor will make a bill of sale if the terms of the lease are complied with, does not convert what would otherwise be a bailment into a sale, but that is not this case. As there is no lease, the provision that a bill of sale shall be executed, in the opinion of the Auditing Judge, furnishes persuasive evidence that the intention of the parties was to withhold the passage of the title of the sprinkler system until it was paid for. The provision that the claimant is to maintain the sprinkler system at its own expense is consistent with the theory that it is a bailment, but this must be considered along with the other facts in the case, and thus considered, it does not prove that the transaction was a bailment.

Even if it were considered that it was a bailment, the claimant could certainly not claim as a preferred creditor for the balance remaining due under the contract, or any portion thereof, in the absence of evidence to show the

value of the sprinkler system. The contract itself does not specify that so much is for insurance and so much for the sprinkler system.

At the common law, a conditional sale is void so far as the creditors of the vendee are concerned, and it is immaterial whether the creditor becomes such before or after the delivery of the goods: See Martin v. Mathiot, 14 S. & R. 214; Rose v. Story, 1 Pa. 190, and Haak v. Linderman, 64 Pa. 499, and this still continues to be the law, except as modified by the Act of May 14, 1925, P. L. 722, which is a re-enactment of the Act of May 1, 1923, P. L. 117, except that it provides that the conditional sale contract shall be recorded in the Prothonotary's office instead of the Recorder of Deeds office, as provided for by the former act. It also provided that the former act shall be considered in force as to contracts that were executed prior to the passage of the Act of 1925. The contract in this case was made Sept. 29, 1924, and, therefore, should have been filed in the Recorder of Deeds office.

The Act of May 1, 1923, provided that: "Every provision in a conditional sale contract in writing, reserving to the seller the property and chattels attached, or to be attached, to realty until the price of the whole, or any portion thereof, shall be paid, or until the performance or happening of any other condition or contingency, shall be valid as to all persons, except as hereinafter otherwise provided." This act is apparently applicable to the instant case.

The contention was also made that the contract was filed too late, in that the agreement to sell the real estate was entered into by the executrix before the date of the filing of the claimant's contract. In the opinion of the Auditing Judge, however, it is unnecessary for him to make a ruling on this question. In his opinion, the claimant could not obtain a lien against the property after the death of the decedent. The lien of the debts of general creditors of the decedent against the real estate attaches at the time of the death of the decedent, and their rights cannot, therefore, be abridged or impaired.

There is a rather unusual provision in this contract that the amount to be paid thereunder shall be, continue and remain a lien on the real estate as security therefor. Such a provision, as against the creditors of the decedent, cannot be held to be a valid one. Except as to encumbrances which are of record, the creditors of a vendee are entitled to assume that the property is his; and it is because of the *indicia* of ownership that credit may be extended. It is for this reason that the courts have held that, so far as the creditors of the vendee are concerned, the title passes to him if the vendor delivers to him possession of the article sold, notwithstanding it may be expressly agreed between the vendor and the vendee that the title shall not pass until full payment is made therefor.

The claimant also contends that it is entitled to prove at the present time for the sum of $6242.64, although the contract provides for payments in instalments, the last one of which falls due in 1934. The Auditing Judge, however, is of the opinion that, in allowing the claim at this time, the present value thereof must be ascertained, and that clause 5 of the contract, which provides, "The owner may anticipate any or all of the above mentioned payments at 7 per cent. per annum," should be applied to ascertain such value. So calculated, according to the agreed statement of facts, the present value is $4604.

The Auditing Judge, therefore, allows the claim in the sum of $4604, without interest and without priority over the general creditors of the estate.

*Francis F. Burch* and *Edward F. Hitchcock*, for exceptants.

*Edmund W. Kirby* (of *Morris & Kirby*), contra.

### Jenkins's Estate.

HENDERSON, J., March 25, 1927.—Does this contract constitute a bailment or a conditional sale? The Auditing Judge ruled it was a conditional sale, and we will briefly give our reasons for agreeing with him.

"Possession of personal property is the great mark of ownership; . . . and, in doubtful cases, the court, in construing the contract, has been governed" by this principle. In other words, the presumption is in favor of a sale and he who claims a bailment has the burden of proving it: Ott *v*. Sweatman, 166 Pa. 217.

In the latter case the words "construct and erect" were held to pass title when the materials were erected and to negative the idea of a bailment. In the instant contract the language is, "will cause to be installed upon the 'assets' (building, machinery and stock) a sprinkler equipment constructed in accordance with plans," &c. "Install" and "construct" are certainly the equivalent of "construct and erect," and are sufficient to pass title to the materials when erected. They do not imply a bailment.

Furthermore, this contract is not merely for the construction of a sprinkler system, but for insurance as well, and it has not been explained how such an agreement can be construed as a bailment.

The exceptant contends that they might have issued a writ of replevin and removed the sprinkler system before the sale under decree of this court for the payment of debts, and rather than take that action they agreed to substitute the value of the sprinkler system—alleged to be $4604.06—and have this court determine the question. There is no such agreement of record. Furthermore, the title company has arbitrarily held up $5000 of the consideration money on the theory that these exceptants had a lien which would be removed. If they had a lien, it was discharged by the sale under decree of this court for the payment of debts, and thrown upon the fund. The title company should forthwith pay to this accountant the $5000 improperly retained. Had a writ of replevin been issued, the exceptant's bond would have been liable for the removal of the sprinkler system, because it was the subject of a conditional sale and not a bailment.

The exceptions are dismissed and the adjudication is confirmed absolutely.